UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| RIZWAN KHALIQ, et al., |
| Plaintiffs, |
| v. |
| REPUBLIC OF SUDAN, et al., |
| Defendants. |

Civil Action No. 10-356 (JDB)

**MEMORANDUM OPINION**[1]

Over fifteen years ago, on August 7, 1998, the United States embassies in Nairobi, Kenya and Dar es Salaam, Tanzania were devastated by simultaneous suicide bombings that killed hundreds of people and injured over a thousand. This Court has entered final judgment on liability under the Foreign Sovereign Immunities Act ("FSIA") in this civil action and several related cases—brought by victims of the bombings and their families—against the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan, the Islamic Republic of Iran, and the Iranian Ministry of Information and Security (collectively "defendants") for their roles in supporting, funding, and otherwise carrying out these unconscionable acts.[2] The next step in the case is to assess and award damages to each individual plaintiff, and in this task the Court has been aided by a special master.

Plaintiffs are two U.S. citizens injured in the Nairobi bombing, as well as seven immediate family members of the victims, all of whom are also U.S. citizens. Service of process

---

[1] The Court has redacted plaintiffs' names in both this Opinion and the Judgment filed this date—but the Court has only redacted in this case precisely as requested by plaintiffs' counsel—and unredacted versions will be filed under seal. See Mot. for Order to Redact [ECF No. 39].

[2] Plaintiffs in some of the related actions have also sued—and the Court has entered judgment against—the Iranian Revolutionary Guards Corps.

1

was completed upon each defendant, but defendants failed to respond, and a default was entered against each defendant. This Court then held that it has jurisdiction over the defendants and that the U.S. nationals have a federal cause of action under 28 U.S.C. § 1605A(c). See Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 148-51 (D.D.C. 2011). A final judgment on liability was then entered in favor of plaintiffs. Nov. 30, 2011 Order [ECF No. 25]. The deposition testimony and other evidence presented established that the defendants were responsible for supporting, funding, and otherwise carrying out the bombings in Nairobi and Dar es Salaam. See Owens, 826 F. Supp. 2d at 135-47.

The Court then referred plaintiffs' claims to a special master, Paul G. Griffin, to prepare proposed findings and recommendations for a determination of damages. Feb. 27, 2012 Order Appointing Special Masters [ECF No. 28] 2. The special master has now filed a completed report, and plaintiffs have filed proposed findings of fact and conclusions of law based on those reports. See Report of Special Master Paul Griffin [ECF No. 34]; Proposed Findings of Fact & Conclusions of Law [ECF No. 36]. In completing those reports and in finding the facts, the special master relied on sworn testimony, expert reports, medical records, and other evidence. The reports extensively describe the key facts relevant to each of the plaintiffs and carefully analyze their claims under the framework established in mass tort terrorism cases. The Court commends Paul Griffin for his excellent work and thoughtful analysis.

The Court hereby adopts all facts found by the special master relating to all plaintiffs in this case. Where the special master has received evidence sufficient to find that a plaintiff is a U.S. national and is thus entitled to maintain a federal cause of action, the Court adopts that finding. The Court also adopts all damages recommendations in the reports, with the few adjustments described below. "Where recommendations deviate from the Court's damages

framework, 'those amounts shall be altered so as to conform with the respective award amounts set forth' in the framework, unless otherwise noted." Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 82-83 (D.D.C. 2010) (quoting Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 53 (D.D.C. 2007) ("Peterson II"), abrogation on other grounds recognized in Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 65 (D.D.C. 2013)). As a result, the Court will award plaintiffs a total judgment of over $49 million.

## CONCLUSIONS OF LAW

**I.  Plaintiffs Are Entitled To Damages On Their Federal Law Claims Under 28 U.S.C. § 1605A**

"To obtain damages in a Foreign Sovereign Immunities Act (FSIA) action, the plaintiff must prove that the consequences of the defendants' conduct were reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with application of the American rule on damages." Valore, 700 F. Supp. 2d at 83. Plaintiffs here have proven that the consequences of the defendants' conduct were reasonably certain to—and indeed intended to—cause injury to plaintiffs. See Owens, 826 F. Supp. 2d at 135-46. As discussed in this Court's previous opinion, because the FSIA-created cause of action "does not spell out the elements of these claims that the Court should apply," the Court "is forced . . . to apply general principles of tort law" to determine plaintiffs' entitlement to damages on their federal claims. Id. at 157 n.3.

Survivors here are entitled to recover for the pain and suffering caused by the bombings: acts of terrorism "by their very definition" amount to extreme and outrageous conduct and are thus compensable by analogy under the tort of "intentional infliction of emotional distress." Valore, 700 F. Supp. 2d at 77 (citing Restatement (Second) of Torts § 46(1) (1965)); see Baker v. Socialist People's Libyan Arab Jamahriya, 775 F. Supp. 2d 48, 74 (D.D.C. 2011) (permitting

3

plaintiffs injured in state-sponsored terrorist bombings to recover for personal injuries, including pain and suffering, under tort of "intentional infliction of emotional distress"); Estate of Bland v. Islamic Republic of Iran, 831 F. Supp. 2d 150, 153 (D.D.C. 2011) (same). Hence, "those who survived the attack may recover damages for their pain and suffering, . . . [for] economic losses caused by their injuries; . . . [and] family members can recover solatium for their emotional injury . . . ." Oveissi v. Islamic Republic of Iran, 879 F. Supp. 2d 44, 55 (D.D.C. 2012) ("Oveissi II") (citing Valore, 700 F. Supp. 2d at 82-83); 28 U.S.C. § 1605A(c). Accordingly, all plaintiffs who were injured in the 1998 bombings can recover for their pain and suffering as well as their economic damages, and their immediate family members—if U.S. nationals—can recover for solatium. Bland, 831 F. Supp. 2d at 153.

## II. Damages

Having established that plaintiffs are entitled to damages, the Court now turns to the question of the amount of damages, which involves resolving common questions related to plaintiffs with similar injuries. The damages awarded to each plaintiff are laid out in the tables in the separate Order and Judgment issued on this date.

### a. Compensatory Damages

#### 1. Economic damages

The special master recommends awarding economic damages to account for certain out-of-pocket medical expenses—which may be recovered under 28 U.S.C. § 1605A(c)—incurred by John Victim Doe as a direct result of the bombings. The Court adopts the special master's recommendations as to out-of-pocket medical expenses John Victim Doe incurred.

2. <u>Awards for pain and suffering due to injury</u>

Courts determine pain-and-suffering awards for survivors based on factors including "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." See <u>O'Brien v. Islamic Republic of Iran</u>, 853 F. Supp. 2d 44, 46 (D.D.C. 2012) (internal quotation marks omitted). When calculating damages amounts, "the Court must take pains to ensure that individuals with similar injuries receive similar awards." <u>Peterson II</u>, 515 F. Supp. 2d at 54. Recognizing this need for uniformity, courts in this district have developed a general framework for assessing pain-and-suffering damages for victims of terrorist attacks, awarding a baseline of $5 million to individuals who suffer severe physical injuries, such as compound fractures, serious flesh wounds, and scars from shrapnel, as well as lasting and severe psychological pain. See <u>Valore</u>, 700 F. Supp. 2d at 84. Where physical and psychological pain is more severe—such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead—courts have departed upward from this baseline to $7 million and above. See <u>O'Brien</u>, 853 F. Supp. 2d at 47. Similarly, downward departures to a range of $1.5 to $3 million are warranted where the victim suffers severe emotional injury accompanied by relatively minor physical injuries. See <u>Valore</u>, 700 F. Supp. 2d at 84-85.

The special master recommends an award of $5 million in pain and suffering for John Victim Doe, and a downward departure from the baseline to $1.5 million for his wife, Jane Spouse Doe. Report of Special Master Paul Griffin [ECF No. 34] 54-55. The Court will adopt these recommendations, while noting their consistency with awards in prior cases to plaintiffs who suffered similar injuries. <u>See, e.g.</u>, <u>Valore</u>, 700 F. Supp. 2d at 84-85.

5

3. <u>Solatium</u>

"In determining the appropriate amount of compensatory damages, the Court may look to prior decisions awarding damages for pain and suffering, and to those awarding damages for solatium." <u>Acosta v. Islamic Republic of Iran</u>, 574 F. Supp. 2d 15, 29 (D.D.C. 2008). Only immediate family members—parents, siblings, spouses, and children—are entitled to solatium awards. <u>See</u> <u>Valore</u>, 700 F. Supp. 2d at 79. The commonly accepted framework for solatium damages in this district is that used in <u>Peterson II</u>, 515 F. Supp. 2d at 52. <u>See</u> <u>Valore</u>, 700 F. Supp. 2d at 85; <u>Belkin</u>, 667 F. Supp. 2d at 23. According to <u>Peterson II</u>, the appropriate amount of damages for family members of injured victims is as follows: $4 million to spouses of injured victims, $2.5 million to parents of injured victims, and $1.25 million to siblings of injured victims. <u>Peterson II</u>, 515 F. Supp. 2d at 52.

Although these amounts are guidelines, not rules, <u>see</u> <u>Valore</u>, 700 F. Supp. 2d at 86, the Court finds the distinctions made by the <u>Valore</u> court to be responsible and reasonable, and hence it will adopt the same guidelines for determining solatium damages here. In the interests of fairness and to account for the difficulty in assessing the relative severity of each family member's suffering, in this case and in related cases, the Court will not depart from those guidelines for any individual plaintiff.

The Court finds that the special master has appropriately applied the solatium damages framework to most of the plaintiffs in this case, and will adopt his recommendations with one exception. Other courts in this district have held that it is inappropriate for the solatium awards of family members to exceed the pain-and-suffering awards of surviving victims. <u>See</u> <u>Davis</u>, 882 F. Supp. 2d at 15; <u>O'Brien</u>, 853 F. Supp. 2d at 47; <u>Bland</u>, 831 F. Supp. 2d at 157. The Court will follow that approach here. The special master recommended solatium awards exceeding the

pain-and-suffering awards to the related victim in one case. Hence, the Court will reduce John Victim Doe's solatium award from $4 million to $1.5 million to match his wife's pain-and-suffering award.

### b. Punitive Damages

Plaintiffs in this case have waived their claims for punitive damages. See Waivers of Punitive Damages [ECF No. 37-2]. Hence, the Court will dismiss Counts IV, VI, VIII, X, XII, XIV, XVI, XVIII, and XX of [29] plaintiffs' First Amended Complaint.

### c. Prejudgment Interest

An award of prejudgment interest at the prime rate is appropriate in this case. See Oldham v. Korean Air Lines Co., Ltd., 127 F.3d 43, 54 (D.C. Cir. 1997); Forman v. Korean Air Lines Co., Ltd., 84 F.3d 446, 450-51 (D.C. Cir. 1996). Prejudgment interest is appropriate on the whole award, including pain and suffering and solatium, with one exception. See Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 214-15 (D.D.C. 2012) (awarding prejudgment interest on the full award). But see Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 16, 30 n.12 (D.D.C. 2011) (declining to award prejudgment interest on solatium damages). Under the applicable law of the District of Columbia, the economic loss figures recommended by the special master must be adjusted to reflect present discounted value. See District of Columbia v. Barritaeu, 399 A.2d 563, 568-69 (D.C. 1979). To accomplish this, the Court will apply a different multiplier to the $720 in medical expenses incurred by John Victim Doe in 2009.[3] Awards for pain and suffering and solatium are calculated without reference to the time elapsed since the attacks. Because plaintiffs were unable to bring their claims immediately after the attacks, they have lost use of the money to which they were entitled upon incurring their injuries. Denying prejudgment interest on these damages would allow defendants to profit from the use of the money over the

---

[3] Using the methodology detailed below, the proper multiplier for an expense incurred in 2009 is 1.17341.

last fifteen years. Awarding prejudgment interest, on the other hand, reimburses plaintiffs for the time value of money, treating the awards as if they were awarded promptly and invested by plaintiffs.

The Court will calculate the applicable interest using the prime rate for each year. The D.C. Circuit has explained that the prime rate—the rate banks charge for short-term unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest, one "more appropriate" than more conservative measures such as the Treasury Bill rate, which represents the return on a risk-free loan. See Forman, 84 F.3d at 450. Although the prime rate, applied over a period of several years, can be measured in different ways, the D.C. Circuit has approved an award of prejudgment interest "at the prime rate for each year between the accident and the entry of judgment." See id. at 450. Using the prime rate for each year is more precise than, for example, using the average rate over the entire period. See Doe, 943 F. Supp. 2d at 185 (noting that this method is a "substantially more accurate 'market-based estimate'" of the time value of money (citing Forman, 84 F. 3d at 451)). Moreover, calculating interest based on the prime rate for each year is a simple matter.[4] Using the prime rate for each year results in a multiplier of 2.26185 for damages incurred in 1998.[5] Accordingly, the Court will use this multiplier to calculate the total award.[6]

---

[4] To calculate the multiplier, the Court multiplied $1.00 by the prime rate in 1999 (8%) and added that amount to $1.00, yielding $1.08. Then, the Court took that amount and multiplied it by the prime rate in 2000 (9.23%) and added that amount to $1.08, yielding $1.17968. Continuing this iterative process through 2014 yields a multiplier of 2.26185.

[5] The Court calculated the multiplier using the Federal Reserve's data for the average annual prime rate in each year between 1998 and 2014. See Bd. of Governors of the Fed. Reserve Sys. Historical Data, available at http://www.federalreserve.gov/releases/h15/data.htm (last visited March 28, 2014). As of the date of this opinion, the Federal Reserve has not posted the annual prime rate for 2014, so the Court will conservatively estimate that rate to be 3.25%, the rate for the previous six years.

[6] The product of the multiplier and the base damages amount includes both the prejudgment interest and the base damages amount; in other words, applying the multiplier calculates not the prejudgment interest but the base damages amount plus the prejudgment interest, or the total damages award.

## **CONCLUSION**

The 1998 embassy bombings shattered the lives of all plaintiffs in this case. Reviewing their personal stories reveals that, even more than fifteen years later, they each still feel the horrific effects of that awful day. Damages awards cannot fully compensate people whose lives have been torn apart; instead, they offer only a helping hand. But that is the very least that these plaintiffs are owed. Hence, it is what Court will facilitate.

A separate Order consistent with these findings has issued on this date.

                                                                                 /s/
                                                            JOHN D. BATES
                                        United States District Judge

Dated: March 28, 2014